UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ARMARD NORRINGTON | CIVIL ACTION 1:15-CV-01830 |
| VERSUS | JUDGE TRIMBLE |
| C.O. R. PERRY, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Defendant Perry filed a motion for summary judgment (Doc. 45). Plaintiff has not opposed the motion. Perry's motion should be granted and Norrington's action should be dismissed with prejudice fecause there are no genuine issues of material fact which would preclude a summary judgment,.

I. Background

Before the Court is a complaint filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), by plaintiff Armard Norrington ("Norrington"). The sole remaining defendant is C.O. R. Perry ("Perry"), a corrections officer employed by the Bureau of Prisons at the United States Penitentiary in Pollock, Louisiana ("USP-Pollock").[1] Norrington contends Perry assaulted him and used excessive force against him when handcuffing and escorting him to the lieutenant's office on June 7, 2014 (Docs. 1, 8). Norrington contends he

---

[1] The other named defendants were dismissed (Doc. 17).

suffered injuries to his face, head, jaw, wrists, and lower back (Docs. 1, 8). Norrington contends that, when he filed a grievance about the incident, Perry retaliated by writing a false incident report against him, dated June 21, 2014. Norrington seeks monetary damages (including punitive damages) and a declaratory judgment.

## II. Law and Analysis

### A. There are no genuine issues of material fact that preclude a summary judgment in favor of Perry on the issue of excessive force.

Perry contends Norrington's action should be dismissed because he did not use excessive force against Norrington, and because Norrington's injury was *de minimis*.

Under Bivens, a plaintiff may recover damages for any injuries suffered as a result of federal agents' violations of his constitutional rights.

In Hudson v. McMillian, 503 U.S.1 (1992), the Supreme Court discussed the Whitley v. Albers, 475 U.S. 312 (1986) approach to evaluating excessive force claims, and found the extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. Instead, the extent of injury inflicted may evince such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur. Hudson, 503 U.S. at 6-7. The Hudson court further held that, whenever prison officials stand accused of using excessive force, the core judicial inquiry is that set out in Whitley: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. See Hudson, 503 U.S. at 6-7; see also Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

2

Courts considering a prisoner's claim must ask both (1) if the officials acted with a sufficiently culpable state of mind; and (2) if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. The objective component of an Eighth Amendment claim is therefore contextual and responsive to contemporary standards of decency. See Hudson, 503 U.S. at 8. In the excessive force context, when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. See id. at 9. However, the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. See id. at 9-10. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

Norrington alleges that, on June 7, 2014, he was told to submit to hand restraints behind his back (Doc. 8). He complied and Perry over-tightened the restraints, drawing blood, causing pain, and cutting off the circulation to Norrington's hands (Doc. 8). Norrington further alleges that Perry violently yanked him sideways, using his own feet to sweep Norrington's feet out from under him and force him to the ground (Doc. 8). Norrington contends he fell to the concrete on his face and head, then Perry drove his knee into Norrington's lower back, causing pain (Doc. 8). Other prison officials then arrived on the scene and Lt. Jackson ordered the restraints loosened (Doc. 8).

When no incident report was written, Norrington started the grievance process for use of excessive force on June 18, 2014 (Doc. 8). Norrington contends that, on June 21, 2014, Perry retaliated by writing an incident report against Norrington (Doc. 8).

The incident report states Norrington refused to tuck in his shirt, made racial slurs, tried to clip his hand restraints, became combative, and attempted to strike the escorting officer with his right elbow (Doc. 8-1, p. 11, 13 /17). Norrington was found guilty and sanctions were recommended (Doc. 8-1, p. 13/17).

Perry shows, through an affidavit by D. Daniels, a Cook Supervisor at USP-Pollock, that Daniels saw the entire incident between Perry and Norrington (Doc. 45-4). Daniels states in his affidavit that he saw Perry place hand restraints on Norrington and begin to escort him towards the lieutenant's office. Daniels saw Norrington jerk to the right in an attempt to pull away from Perry, then Perry put Norrington on the ground (Doc. 45-4). Daniels states he activated the Emergency Notification system and continued to monitor the situation until additional staff arrived (Doc. 45-4). Daniels did not know who the inmate involved was until after the incident (Doc. 45-4).

An affidavit from S. Ashworth, then a Recreation Specialist at USP-Pollock, shows Ashworth saw Perry place Norrington against a wall in an attempt to put hand restraints on him, saw Norrington jerk away in an aggressive manner, and saw Perry put Norrington on the ground (Doc. 45-5). Ashworth then went to them, told Perry to remove himself from the situation, and took control of Norrington (Doc. 45-5).

4

Ashworth did not know the identity of the inmate involved until after the incident (Doc. 45-5).

Perry further shows, through an excerpt from Norrington's deposition, that Norrington said his dreads protected his head, so he just had swelling in his jaw (Doc. 45-3, pp. 9-10/10). Norrington said he went to the infirmary on June 7, 2014, he was told his jaw was swollen, and he did not have to go back to the infirmary for that again (Doc. 45-3, p. 10/10). Norrington's Health Services clinical notes from June 7, 2014 show he did not have any injury from the alleged use of force (Doc. 45-6). The assessment shows Norrington complained of pain to the left side of his jaw, but there was no redness, swelling, bruising, or abrasions; no loose teeth or abrasions inside his mouth; he had good pulses in all extremities; his restraints were on properly; and he ambulated without difficulty (Doc. 45-6).

Perry's evidence shows Norrington tried to jerk away from Perry and Perry put him on the floor in a good faith effort to control him. Although Norrington claims Perry used excessive force, there is no evidence that Norrington was injured. Any pain he suffered from being placed on the floor was *de minimis*. There is also no evidence that Perry's conduct was repugnant or malicious. Therefore, Perry's unrefuted evidence shows he did not use excessive force against Norrington.

Since there are no genuine issues of material fact that would preclude a summary judgment, Perry's unopposed motion for summary judgment should be granted on the issue of excessive force.

## B. There are no genuine issues of material fact that preclude a summary judgment in favor of Perry on the issue of retaliation.

Norrington also appears to allege a retaliation claim against Perry, contending Perry filed a false incident report against him in retaliation for his having filed a grievance.

Retaliation for the exercise of a constitutional right is actionable, even if the act, when taken for different reasons, would have been proper. See Woods v. Smith, 60 F.3d 1161, 1165 (5th Cir. 1995), cert. den., 516 U.S. 1084 (1996). To state a retaliation claim, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." See Lockamy v. Rodriguez, 402 Fed.Appx. 950, 951–52 (5th Cir .2010) (citing Jones v. Greninger, 188 F.3d 322, 324–25 (5th Cir. 1999)). The inmate must be prepared to establish that, but for the retaliatory motive, the complained of incident (such as filing disciplinary reports) would not have occurred. Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred. See Woods, 60 F.3d at 1166; see also Lockamy, 402 Fed. Appx. at 952.

Norrington has not shown that, but for Norrington having filed the grievance against Perry, Perry would not have filed the incident report. Norrington was convicted of a disciplinary infraction on the incident report (Doc. 8-1, p. 11/17). Therefore, it is not plausible to infer that Perry only filed the incident report in order

to retaliate against Norrington for having filed a grievance. In other words, Norrington cannot show that "but for" a retaliatory motive, Perry would not have filed the incident report.

Since there are no genuine issues of material fact that would preclude a summary judgment, Perry's unopposed motion for summary judgment should be granted on the issue of retaliation.

## III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Perry's unopposed motion for summary judgment (Doc. 45) be GRANTED and that Norrington's action be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ.

P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 28th day of August, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge